UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SAMUEL SURLES,

              Plaintiff,                  CIVIL ACTION NO. 07-13555

        v.                     DISTRICT JUDGE GERALD E. ROSEN

DONALD ANDISON, R. SANDS,     MAGISTRATE JUDGE VIRGINIA MORGAN
PAYNE, DINIUS, DULWORTH,
McMURTMI, MITCHELL, FACE,
NIEDERMEYER, D. LAW, and
LASH,

              Defendants.[1]

_____/

## REPORT AND RECOMMENDATION TO
## GRANT SUMMARY JUDGMENT TO DEFENDANTS

### I. Introduction

      This matter comes before the court on defendants Dulworth, McMurtmi, Face, Law,

Lash, Andison, Sands, Payne, and Dinius' Motion for Summary Judgment and Dismissal (D/E

#36), plaintiff's Motion for Partial Summary Judgment (D/E #48), plaintiff's Motion for Entry of

Default and Default Judgment (D/E #49), and defendants Mitchell and Niedermeyer's Motion

for Summary Judgment (D/E #55).  For the reasons stated below, this court recommends that

---

[1]Plaintiff's complaint also named a number of other defendants, but those defendants were dismissed on March 27, 2008, by the Honorable Gerald E. Rosen because plaintiff failed to alleged facts demonstrating their involvement in the events giving rise to his complaint (D/E #12).

defendants' motions be **GRANTED**, plaintiff's motions be **DENIED**, and that this case be dismissed.

## II. Background

### A. Complaint

On August 23, 2007, plaintiff filed the complaint against defendants in this case (D/E #1).  In that complaint, plaintiff alleges that defendants have confiscated his legal documents, damaged or destroyed legal and religious papers and property, taken actions to deprive him of access to the courts and to violate his First Amendment rights, retaliated against him by filing false misconduct charges and transferring him to other prisons, and/or have conspired against him to violate his rights.

Specifically, plaintiff alleges that, on January 16, 2004, Andison and others confiscated plaintiff's legal papers and told plaintiff that plaintiff was prohibited from any future communications with the Michigan Secretary of State or any federal agencies or offices. (Complaint, ¶ 8) On March 29, 2004, Andison and Sands searched plaintiff's personal and legal papers.  Sands seized twenty-six floppy disks and a legal brief belonging to another inmate from plaintiff.  Plaintiff requested that the property be returned, but Andison refused to do so. (Complaint, ¶ 9) On March 29, 2004, Andison, Sands, Lash, Dinius, Face, McMurtmi, Mitchell, and Payne searched through and read plaintiff's legal mail and complaints against Andison and others.  Those defendants also seized some of plaintiff's floppy disks and legal notes.  After plaintiff complained about those actions, Andison told plaintiff that Andison's agents did the right thing by breaking the printer on plaintiff's brother's word processor and that plaintiff should

not have access to computers while in prison.  Plaintiff then complained that Andison was

retaliating against plaintiff because plaintiff had exercised his First Amendment rights.

(Complaint, ¶ 16) Plaintiff was transferred by Andison to "three (3) block" and, while plaintiff

was there, Niedermeyer's agent wrote plaintiff up for a "bogus" misconduct ticket.  (Complaint,

¶ 17) On April 11, 2004, Andison seized plaintiff's legal papers in order to destroy them without

just compensation while also punishing plaintiff with five days "toplock," five days of loss of

privileges, and fifty hours of extra duty because plaintiff used the Resident Benefit Fund to do

legal work .  (Complaint, ¶ 10) On July 1, 2004, Dulworth conducted a legal property hearing on

the instruction of Andison.  Plaintiff objected to the hearing on the basis that Dulworth had no

authority to conduct such a hearing, but Dulworth had the property destroyed instead of allowing

plaintiff to mail them to an attorney.  (Complaint, ¶ 20)  On July 7, 2004, Andison, Sands, and

Mitchell seized more of plaintiff's Uniform Commercial Code ("UCC') papers.  Plaintiff

objected to Andison conducting a property hearing without any authority to do so, but Andison

still conducted the hearing while also refusing to itemized all the papers taken.  Andison also

told plaintiff that plaintiff had no First Amendment right to freedom of speech.  (Complaint, ¶

11) On July 17, 2004, Andison, Payne, and Sands personally participated in a seizure of

plaintiff's legal papers.  (Complaint, ¶ 14)  On September 10, 2004, Andison, Payne, Sands, and

McMurtmi participated in a property hearing regarding legal property seized from plaintiff.  At

the hearing, Andison refused to return any of the property and sentenced plaintiff to five days

"toplock" detention.  (Complaint, ¶ 15) On April 4, 2005, Andison and Payne searched

plaintiff's personal property and Payne read plaintiff's legal papers and mails.  Andison also told

-3-

plaintiff that he was working on getting plaintiff transferred to another facility because plaintiff filed too many grievances.  Plaintiff was also labeled a "Security Threat" while having his personal and legal property seized.  (Complaint, ¶ 12)  On July 3, 2005, Face seized some of plaintiff's legal papers while, on July 12, 2005, Andison participated in an unauthorized property hearing with respect to that property.  (Complaint, ¶ 13) On October 20 or 21, 2005, Andison's agents transferred plaintiff to the G. Robert Cotton Facility in Jackson, Michigan.  According to plaintiff, he was transferred out of retaliation.  Plaintiff also alleged that, during the transfer, Andison's agents intentionally failed to package plaintiff's word processor properly and it was further damaged.  (Complaint, ¶ 18)

Under the "Claim I" section of his complaint, plaintiff alleges that defendants conspired to violate plaintiff's inalienable right to conduct business privately, seize plaintiff's property, deter plaintiff's access to the courts, hold illegal property hearings, violate the Ex Post Facto clause, intentionally break plaintiff's brother's word processor, and violate plaintiff's right to freedom of speech.  (Complaint, pp. 9-A through 9-B)  Under the "Claim II" section of his complaint, plaintiff alleges that Andison and Dulworth retaliated against other inmates who had signed affidavits in support of plaintiff by writing them up for misconduct, Andison and Dulworth retaliated against plaintiff by holding illegal property hearings, Andison retaliated against plaintiff by ordering his agents to seize plaintiff's property, and Andison retaliated against plaintiff by having plaintiff transferred to "three (3) block" in order to have plaintiff written up for a "bogus" major misconduct ticket.  (Complaint, pp. 9-B through 9-C)

Plaintiff seeks injunctive relief, declaratory relief, monetary damages, and other appropriate relief.

### **B. Relationship to Companion Case**

This case was originally assigned to United States District Court Judge Thomas L. Ludington and Judge Ludington referred it to United States Magistrate Judge Charles E. Binder (D/E #5). On October 2, 2007, Judge Binder issued a Report and Recommendation stating that this case should be reassigned to United States District Court Judge Gerald E. Rosen as a companion case to Case No. 05-74534 (D/E #6). Judge Ludington subsequently adopted in part and modified in part that Report and Recommendation (D/E #7), and the case was reassigned to Judge Rosen (D/E #8).

In Case No. 05-74534, plaintiff, then a state prisoner housed at the Gus Harrison Correctional Facility, filed *pro se* a federal rights complaint under 42 U.S.C. §1983 alleging that Andison confiscated plaintiff's legal papers and computer tapes. The case was assigned to Judge Rosen. (See Surles v. Andison, Case No. 05-74534.) On April 20, 2006, Judge Rosen issued an Order dismissing the case without prejudice as plaintiff had failed to file documentation indicating that he had exhausted the administrative remedies available to him through the Michigan Department of Corrections ("MDOC") grievance procedures. (Case No. 05-74534, D/E #10) On August 23, 2007, plaintiff filed a motion for reconsideration in that case, arguing that he had now completed the MDOC grievance process. (Case No. 05-74534, D/E #12) On September 4, 2007, Judge Rosen denied the motion, noting that Plaintiff had failed

to include with his Motion for Reconsideration the necessary documentation.  (Case No. 05-74534, D/E #13, p. 2)

### C. Motions Before the Court

**1. Defendants Dulworth, McMurtmi, Face, Law, Lash, Andison, Sands, Payne, and Dinius' Motion for Summary Judgment and Dismissal (D/E #36)**

On November 25, 2008, defendants Dulworth, McMurtmi, Face, Law, Lash, Andison, Sands, Payne, and Dinius filed a motion for summary judgment and dismissal (D/E #36).  In that motion, those defendants argued that plaintiff's claims against them should be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing the lawsuit and because plaintiff's claims are barred by the applicable statute of limitations.

On December 30, 2008, plaintiff filed a response to that motion for summary judgment (D/E #47).  In that response, plaintiff argues that defendants' attorney was misleading the court and that defendants should hire their own attorney, rather than have one paid for at the taxpayer's expense.  Plaintiff also argues that, so long as the state pays for defendants' attorney, they will continue to violate the rights of inmates.  Plaintiff further argues that he had not filed a new complaint in this action and that he only wanted to reopen the companion case, which had been dismissed due to a lack of exhaustion, after plaintiff did all he could to exhaust his remedies.  Plaintiff also asserted that he has no control over the grievance process and that MDOC officials are biased against him.

**2. Plaintiff's Motion for Partial Summary Judgment**

On December 30, 2008, plaintiff filed a motion for partial summary judgment (D/E #48). In that motion, plaintiff repeats the claims found in his complaint while noting that defendants have never disputed those claims.  As relief, plaintiff requests that the court deny defendants' motion for summary judgment and grant the relief plaintiff seeks in his complaint without an evidentiary hearing.

**3. Plaintiff's Motion for Default Judgment**

On December 30, 2008, plaintiff filed a motion for entry of default and default judgment against defendants Dulworth, McMurtmi, Mitchell, Face, Niedermeyer, Law, Lash, Andison, Sands, Payne, and Dinius (D/E #49).  In that motion, plaintiff argues that those defendants failed to respond to plaintiff's complaint and, consequently, default judgment should be entered against them.

**4. Defendants Mitchell and Niedermeyer's Motion for Summary Judgment**

On February 23, 2009, defendants Mitchell and Niedermeyer filed a motion for summary judgment (D/E #55).  In that motion, Mitchell and Niedenmeyer adopted the arguments made earlier by the other defendants, *i.e.*, that plaintiff's claims were time-barred and that plaintiff had failed to exhaust his administrative remedies.

On March 9, 2009, plaintiff filed an objection and response in opposition to Mitchell and Niedenmeyer's motion for summary judgment (D/E #59).  In that response, plaintiff argues that Mitchell and Niedermeyer's motion is a subterfuge meant to take the court's attention away from the fact that they are in default and have no defense to plaintiff's claims.  Plaintiff also argues

that Michigan tax payers should not be required to pay for defendant's attorney.  Plaintiff further

argues that his claims regarding the violations of this inalienable rights can never be time-barred.

On March 17, 2009, plaintiff filed a pleading in opposition/response to Mitchell and

Niedenmeyer's motion for summary judgment (D/E #60).  In that pleading, plaintiff argues that

genuine issues of material fact exist with respect to his claims.  Plaintiff also argues that he

exhausted his administrative remedies prior to filing the lawsuit.

### III. Standard of Review

#### A. Summary Judgment

All of the parties move for summary judgment pursuant to Federal Rule of Civil

Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim

is asserted or a declaratory judgment is sought may, at any time, move without or without

supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  In deciding a motion for summary judgment, the court must view the evidence

and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric

Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356

(1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of

material fact.  Once the moving party has carried his burden, the party opposing the motion

"must come forward with specific facts showing that there is a genuine issue for trial."
Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the
allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that
material issues of fact exist.  Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir.
2003); Fed. R. Civ. P. 56(e).  "Where the record taken as a whole could not lead a rational trier
of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475
U.S. at 587, quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88
S.Ct. 1575, 1592 (1968)).

### B. Dismissal

Defendants Dulworth, McMurtmi, Face, Law, Lash, Andison, Sands, Payne, and Dinius
also move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Fed. R. Civ. P. 12(b)(6) provides
that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."
To survive a Rule 12(b)(6) motion, "factual allegations contained in a complaint must raise a
right to relief above the speculative level."  Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d
426, 430 (6th Cir. 2008) (internal quotation marks omitted).  That does not "require heightened
fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its
face" Bell Atl. Corp. v. Twombly, 550 U.S. 544, __, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929
(2007).  See also CBC Companies, Inc. v. Equifax, Inc., 561 F.3d 569, 571 (6th Cir. 2009).  In
its review, the court must construe the complaint in the light most favorable to the plaintiff,
accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.
Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007); Harbin-Bey v. Rutter, 420 F.3d 571,

575 (6th Cir. 2005).  The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  <u>Bassett</u>, 528 F.3d at 430.

### C. Default Judgment

Plaintiff also moves for default judgment against defendants Dulworth, McMurtmi, Mitchell, Face, Niedermeyer, Law, Lash, Andison, Sands, Payne and Dinius.  With respect to default judgments, Fed. R. Civ. P. 55 provides:

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

> (b) Entering a Default Judgment.

> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

> (2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing.  The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

-10-

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

(c) Setting Aside a Default or a Default Judgment. The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).

(d) Judgment Against the United States. A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

## IV. Discussion

### A. Defendants' Motions

#### 1. Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines

-11-

and other critical procedural rules." <u>Woodford</u>, 126 S.Ct. at 2386 (holding that an inmate's

exhaustion must be in compliance with applicable grievance procedures, specifically deadlines,

because "no adjudicative system can function effectively without imposing some orderly

structure on the course of its proceedings").

      The administrative procedure applicable to the plaintiff's claims is set forth in MDOC

Policy Directive 03.02.130 "Prisoner/Parolee Grievances" (effective date December 19, 2003).

(PD 03.02.130; attached as Exhibit A to D/E #36)  That policy directive sets forth a process

through which an inmate may submit grievances and, pursuant to that policy directive, an inmate

must first attempt to resolve the issue affecting him within two business days of becoming aware

of the grievable issue unless prevented by circumstances beyond his control.  (PD 03.02.130, ¶

R)  If the attempted resolution is not possible or is not successful, the inmate can file a Step I

grievance which can be appealed to Step II and then to Step III of the grievance process.  (PD

03.02.130, ¶ R).  Moreover, if an inmate's grievance reaches Step III of the grievance process,

the information related to the grievance is entered into a grievance tracking database.  (PD

03.02.130, ¶ II)

      In this case, while it was not his burden to do so, plaintiff attached to complaint eight

grievances he filed with respect to the allegations found in his complaint: ARF 06-06-770-28E,

ARF 06-06-771-28E, ARF 06-06-772-28E, ARF 06-06-868-28E, ARF 06-06-830-28E, ARF 06-

06-898-28E, ARF 06-07-917-28E, ARF 06-07-927-28E.  In each of those grievances, plaintiff

stated that they were being filed "under protest, duress and pursuant to the April 18, 2006 Order

and Judgment (without prejudiced [sic]) from U.S. District Court Judge Gerald E. Rosen,

Plaintiff attempts to refile this grievance to exhaust all administrative remedies against Defendant Donald Andison."  All eight of plaintiff's grievances were rejected as untimely at each of the three steps of the MDOC grievance process.  (Grievances and Responses; attached as Exhibits to Complaint)  Defendants also provided an affidavit from Richard Stapleton, of the MDOC Office of Legal Affairs, in which Stapleton asserted that those were the only eight grievances filed with respect to the allegations found in the complaint and pursued through Step III.  (Affidavit of Richard Stapleton, ¶ 6; attached as Exhibit B to D/E #36)  Stapleton also asserted that all of those grievances were rejected as untimely at all three steps of the MDOC grievance process.  (Affidavit of Richard Stapleton, ¶ 6)

Plaintiff's grievances were rejected as untimely because they were filed in 2006 over events that allegedly occurred in 2004 and 2005.  Additionally, because plaintiff's grievances were untimely, the MDOC never ruled upon their merits and plaintiff has failed to properly exhaust his administrative remedies prior to filing this lawsuit.  The United States Supreme Court expressly held in Woodford that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 126 S.Ct. at 2386.  Moreover, the Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones, 127 S.Ct. at 923.  In this case, plaintiff failed to comply with the applicable

-13-

grievance procedures because he failed to timely pursue any grievances regarding the claims in

his complaint through all the steps of the MDOC grievance process and the benefits of the

exhaustion requirement have not be met.  Thus, plaintiff has failed to properly exhaust his

administrative remedies and his complaint should be dismissed without prejudice pursuant to 42

U.S.C. § 1997e(a).

### 2. Statute of Limitations

Defendants also argue that the statute of limitations has passed with respect to some of

plaintiff's claims.  Since Congress did not specifically adopt a statute of limitations governing §

1983 actions, "federal courts must borrow the statute of limitations governing personal injury

actions in the state in which the section 1983 action was brought."  Banks v. City of Whitehall,

344 F.3d 550, 553 (6th Cir. 2003) (citing Wilson v. Garcia, 471 U.S. 261, 275-76, 105 S.Ct.

1938, 85 L.Ed.2d 254 (1985)).  The Sixth Circuit has held that the appropriate statute of

limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year

limitations period for personal injury claims.  Chippewa Trading Co. v. Cox, 365 F.3d 538, 543

(6th Cir. 2004); M.C.L. § 600.5805(10).

"Although state law provides the statute of limitations to be applied in a § 1983 damages

action, federal law governs the question of *when* that limitations period begins to run."  Sevier v.

Turner, 742 F.2d 262, 272 (6th Cir. 1984) (emphasis added); see also Sharpe v. Cureton, 319

F.3d 259, 266 (6th Cir. 2003).  As a general rule, a cause of action "accrues" and the statute of

limitations thereon begins to run when a plaintiff knows, or has reason to know through the

exercise of reasonable diligence, of the injury that provides the basis for the claim.  Kelly v.

-14-

Burks, 415 F.3d 558, 561 (6th Cir. 2005); Friedman v. Estate of Presser, 929 F.2d 1151, 1159 (6th Cir. 1991).

State law tolling principles also apply to determine the timeliness of civil rights claims. See Wilson, 471 U.S. at 268-69, 105 S.Ct. 1938. Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice. Yeo v. State Farm Fire & Cas. Ins. Co., 242 Mich. App. 483, 484 (2000). Tolling under Michigan law extends to periods in which a dismissal without prejudice is pending on appeal. Yeo, 242 Mich. App. at 484; Darin v. Haven, 175 Mich. App. 144, 151-152 (1989).

Plaintiff filed this complaint on August 23, 2007, so the statute of limitations would barred any claims that arose prior to August 23, 2004, unless those claims were tolled. Defendants do appear to correctly concede that any claims plaintiff raised in the companion case were tolled while that case was pending and, therefore, still fall within the applicable statute of limitations. Therefore, the claims in his complaint arising from events that before August 23, 2004, and that were not raised in the companion case are barred by the statute of limitations.

In this case, as described above, plaintiff's allegations included claims based on events that occurred prior to August 23, 2004. Specifically, plaintiff alleged that various defendants seized his property, conducted an illegal search, retaliated against him, or conducted an illegal hearing on January 16, 2004, March 29, 2004, April 11, 2004, July 1, 2004, July 7, 2004, and July 17, 2004. Moreover, some of those claims were not raised earlier in the complaint in the companion case. Plaintiff's complaint in the companion case included claims based on events that occurred April 4, 2004, July 9, 2004, July 27, 2004, October 4, 2004, October 5, 2004, April

20, 2005, July 3, 2005, July 12, 2005, July 13, 2005, July 20, 2005, July 29, 2005, August 4, 2005, and August 5, 2005. (Case No. 05-745, D/E #1, p. 3, 5-7)

As discussed above, the claims in plaintiff's complaint arising from events that occurred before August 23, 2004, and that were not raised in the companion case are barred by the statute of limitations.  Given the allegations found in the two complaints, the barred claims are plaintiff's allegations that Andison and others confiscated plaintiff's legal papers on January 16, 2004; Andison, Sands, Lash, Dinius, Face, McMurtmi, Mitchell, and Payne searched plaintiff's papers and seized twenty-six floppy disks on March 29, 2004; Andison seized plaintiff's legal papers in order to destroy them without just compensation and punished plaintiff with five days "toplock" on April 11, 2004; Dulworth conducted an illegal property hearing at the instruction of Andison in July 1, 2004; and Andison, Sands, Payne and Mitchell seized more of plaintiff's Uniform Commercial Code ("UCC") papers on July 7, 2004 and July 17, 2004.

### B. Plaintiff's Motion for Partial Summary Judgment

In plaintiff's motion for partial summary judgment he reiterates the allegations of his complaint while arguing that defendants have defaulted and hidden from the real issues in this case.  None of the defendants filed a response to plaintiff's motion.

As discussed above, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).  When determining whether the movant has met this burden, we must view the evidence in the light most favorable to the nonmoving party.  <u>Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.</u>, 477 F.3d 854, 861 (6th Cir. 2007).

Here, plaintiff has failed to meet his initial burden of demonstrating the absence of a genuine issue of material fact and his motion for partial summary judgment should be denied. Plaintiff argues that, by filing motions arguing that plaintiff's complaint should be dismissed because of lack of exhaustion or the statute of limitations, defendants have shown they have no defense and they are improperly trying to avoid the merits of plaintiff's claims.  However, defendants are well within their rights to file those motions.  <u>See</u> Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 56.

### C. Plaintiff's Motion for Entry of Default and Default Judgment

In his motion for entry of default and default judgment, plaintiff argues that defendants Dulworth, McMurtmi, Mitchell, Face, Niedermeyer, Law, Lash, Andison, Sands, Payne, and Dinius failed to timely answer plaintiff's complaint and that, therefore, entry of default and default judgment should be entered against them.

Plaintiff is correct that, given the dates of their waivers of service, defendants Dulworth, McMurtmi, Face, Law, Lash, Andison, Sands, Payne, and Dinius did not file a timely answer to plaintiff's complaint.  (D/E #16-17, 20-22, 25-28)  However, plaintiff never moved for entry of default at that time and, prior to this motion, those defendants filed the motion for summary judgment and dismissal discussed above (D/E #36).  In any event, even if plaintiff had obtained an entry of default against those defendants because of their late answer, the defendants would

-17-

have been entitled to set aside the entry of default.  See Fed. R. Civ. P. 55(c); <u>Berthelsen v.</u>

<u>Kane</u>, 907 F.2d 617, 620 (6th Cir.1990) (per curiam).  Plaintiff was not prejudiced by the

defendants' late answer, the defendants had a meritorious defense, and there is no indication that

it was defendants' culpable conduct that led to the late answer.  Furthermore, there is a strong

preference for trial on the merits.  See <u>Shepard Claims Serv., Inc. v. William Darrah & Assoc.</u>,

796 F.2d 190, 193-94 (6th Cir. 1986).

With respect to defendants Mitchell and Niedermeyer, plaintiff is not entitled to entry of

default or default judgment because those two defendants timely filed a motion for summary

judgment following their waivers of service.  (D/E #51-52, 55)

**<u>V. Conclusion</u>**

For the reasons discussed above, the court recommends that defendants' motions be

**GRANTED**, plaintiff's motions be **DENIED**, and that this case be dismissed.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140

(1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v.</u>

<u>Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir.

1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: May 20, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on May 20, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

-19-