# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**SAMUEL SURLES, #122260,**

    **Plaintiff,**                      **CIVIL ACTION NO. 07-13555**

**vs.**                                    **CHIEF JUDGE GERALD E. ROSEN**

                                             **MAGISTRATE JUDGE MONA K. MAJZOUB**

**DONALD ANDISON, et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Samuel Surles, currently a prisoner at the Ionia Correctional Facility in Ionia, Michigan, filed this action under 42 U.S.C. §§ 1983 against Defendants Donald Andison, R. Sands, Payne, C. Hemry, Dinius, David Dulworth, McMurtmi, Schmitz, Mitchell, Face, Hill, Krauss, Thomas K. Bell, F. Niedermeyer, D. Law, Bartlett, Rohly, Lash, Letson, Doug Vasbinder, G. Smoyer, Rick Rutrer, Barry Davis, "and others."[1]  (*See* docket no. 1 at 3.)  In his Complaint, Plaintiff alleges that Defendants "have confiscated his legal documents, damaged or destroyed legal and religious papers and property, taken actions to deprive him of access to the courts and to violate his First Amendment rights, retaliated against him by filing false misconduct charges and transferring him to other prisons, and/or have conspired against him to violate his rights." (Docket no. 61 at 2 (citing docket no. 1).)

---

[1] Plaintiff's claims against all of the Defendants except Defendants Andison, Dulworth, McMurtmi, Face, Law, Lash, Sands, Payne, and Dinius were dismissed on March 27, 2008 "because Plaintiff failed to allege facts demonstrating their involvement in the events giving rise to the complaint."  (Docket no. 61 at 1 n.1 (citing docket no. 12).)  Defendant Andison passed away on April 24, 2012.  (*See* docket no. 87.)

1

Before this Court is Defendants' Motion for Summary Judgment, filed on December 18, 2013.  (Docket no. 101.)   Plaintiff filed a Response and Counter Motion for Summary Judgment, which is also before the Court.  (Docket no. 115.)  Plaintiff also filed a Motion to Delay Consideration of Defendants' Motion (docket no. 114) and a Motion for Order to Show Cause related to three non-defendants who allegedly denied Plaintiff's access to the courts (docket no. 113.)  Defendants filed a Response to all three of Plaintiff's Motions. (Docket no. 116.)   Plaintiff filed an Objection to Defendants' Response.  (Docket no. 117.)   All pretrial matters have been referred to the undersigned for consideration.  (Docket no. 74.)   The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.     Recommendation

For the reasons discussed herein, the Court should grant Defendants' Motion for Summary Judgment [101].   The Court should also deny Plaintiff's Motion for Order to Show Cause [113] as moot and deny Plaintiff's Motion to Delay Consideration of Defendants' Motion [114].   And, to the extent the Court considers Plaintiff's Counter-Motion for Summary Judgment contained in his Response to Defendants' Motion [115], the Court should deny the same.   Therefore, this matter should be dismissed in its entirety.

## II.    Report

### A.     Factual Background and Companion Case[2]

> [P]laintiff alleges that, on January 16, 2004, Andison and others confiscated plaintiff's legal papers and told plaintiff that plaintiff was prohibited from any future communications with the Michigan Secretary of State or any federal

---

[2] The Court adopts the following from the May 20, 2009 Report and Recommendation entered previously in this matter.   (Docket no. 61.)

2

agencies or offices. (Complaint, ¶ 8) On March 29, 2004, Andison and Sands searched plaintiff's personal and legal papers. Sands seized twenty-six floppy disks and a legal brief belonging to another inmate from plaintiff. Plaintiff requested that the property be returned, but Andison refused to do so. (Complaint, ¶ 9) On March 29, 2004, Andison, Sands, Lash, Dinius, Face, McMurtmi, Mitchell, and Payne searched through and read plaintiff's legal mail and complaints against Andison and others. Those defendants also seized some of plaintiff's floppy disks and legal notes. After plaintiff complained about those actions, Andison told plaintiff that Andison's agents did the right thing by breaking the printer on plaintiff's brother's word processor and that plaintiff should not have access to computers while in prison. Plaintiff then complained that Andison was retaliating against plaintiff because plaintiff had exercised his First Amendment rights. (Complaint, ¶ 16) Plaintiff was transferred by Andison to "three (3) block" and, while plaintiff was there, Niedermeyer's agent wrote plaintiff up for a "bogus" misconduct ticket. (Complaint, ¶ 17) On April 11, 2004, Andison seized plaintiff's legal papers in order to destroy them without just compensation while also punishing plaintiff with five days "toplock," five days of loss of privileges, and fifty hours of extra duty because plaintiff used the Resident Benefit Fund to do legal work . (Complaint, ¶ 10) On July 1, 2004, Dulworth conducted a legal property hearing on the instruction of Andison. Plaintiff objected to the hearing on the basis that Dulworth had no authority to conduct such a hearing, but Dulworth had the property destroyed instead of allowing plaintiff to mail them to an attorney. (Complaint, ¶ 20) On July 7, 2004, Andison, Sands, and Mitchell seized more of plaintiff's Uniform Commercial Code ("UCC') papers. Plaintiff objected to Andison conducting a property hearing without any authority to do so, but Andison still conducted the hearing while also refusing to itemized all the papers taken. Andison also told plaintiff that plaintiff had no First Amendment right to freedom of speech. (Complaint, ¶ 11) On July 17, 2004, Andison, Payne, and Sands personally participated in a seizure of plaintiff's legal papers. (Complaint, ¶ 14) On September 10, 2004, Andison, Payne, Sands, and McMurtmi participated in a property hearing regarding legal property seized from plaintiff. At the hearing, Andison refused to return any of the property and sentenced plaintiff to five days "toplock" detention. (Complaint, ¶ 15) On April 4, 2005, Andison and Payne searched plaintiff's personal property and Payne read plaintiff's legal papers and mails. Andison also told plaintiff that he was working on getting plaintiff transferred to another facility because plaintiff filed too many grievances. Plaintiff was also labeled a "Security Threat" while having his personal and legal property seized. (Complaint, ¶ 12) On July 3, 2005, Face seized some of plaintiff's legal papers while, on July 12, 2005, Andison participated in an unauthorized property hearing with respect to that property. (Complaint, ¶ 13) On October 20 or 21, 2005, Andison's agents transferred plaintiff to the G. Robert Cotton Facility in Jackson, Michigan. According to plaintiff, he was transferred out of retaliation. Plaintiff also alleged that, during the transfer, Andison's agents intentionally failed to package plaintiff's word processor properly and it was further damaged. (Complaint, ¶ 18)

3

> Under the "Claim I" section of his complaint, plaintiff alleges that defendants conspired to violate plaintiff's inalienable right to conduct business privately, seize plaintiff's property, deter plaintiff's access to the courts, hold illegal property hearings, violate the Ex Post Facto clause, intentionally break plaintiff's brother's word processor, and violate plaintiff's right to freedom of speech. (Complaint, pp. 9-A through 9-B) Under the "Claim II" section of his complaint, plaintiff alleges that Andison and Dulworth retaliated against other inmates who had signed affidavits in support of plaintiff by writing them up for misconduct, Andison and Dulworth retaliated against plaintiff by holding illegal property hearings, Andison retaliated against plaintiff by ordering his agents to seize plaintiff's property, and Andison retaliated against plaintiff by having plaintiff transferred to "three (3) block" in order to have plaintiff written up for a "bogus" major misconduct ticket. (Complaint, pp. 9-B through 9-C)
>
> Plaintiff seeks injunctive relief, declaratory relief, monetary damages, and other appropriate relief.
>
> . . .
>
> This case was originally assigned to United States District Court Judge Thomas L. Ludington and Judge Ludington referred it to United States Magistrate Judge Charles E. Binder (D/E #5). On October 2, 2007, Judge Binder issued a Report and Recommendation stating that this case should be reassigned to United States District Court Judge Gerald E. Rosen as a companion case to Case No. 05-74534 (D/E #6). Judge Ludington subsequently adopted in part and modified in part that Report and Recommendation (D/E #7), and the case was reassigned to Judge Rosen (D/E #8).
>
> In Case No. 05-74534, plaintiff, then a state prisoner housed at the Gus Harrison Correctional Facility, filed pro se a federal rights complaint under 42 U.S.C. §1983 alleging that Andison confiscated plaintiff's legal papers and computer tapes. The case was assigned to Judge Rosen. (See *Surles v. Andison*, Case No. 05-74534.) On April 20, 2006, Judge Rosen issued an Order dismissing the case without prejudice as plaintiff had failed to file documentation indicating that he had exhausted the administrative remedies available to him through the Michigan Department of Corrections ("MDOC") grievance procedures. (Case No. 05-74534, D/E #10) On August 23, 2007, plaintiff filed a motion for reconsideration in that case, arguing that he had now completed the MDOC grievance process. (Case No. 05-74534, D/E #12) On September 4, 2007, Judge Rosen denied the motion, noting that Plaintiff had failed to include with his Motion for Reconsideration the necessary documentation. (Case No. 05-74534, D/E #13, p. 2)

(Docket no. 61 at 2-6.)

4

### B.      Procedural History

After his initial case was dismissed, Plaintiff filed eight grievances "under protest, duress and pursuant to the April 18, 2006 Order and Judgment (without prejudiced (sic)) from U.S. District Court Judge Gerald E. Rosen," noting that he was "attempt[ing] to refile th[ese] grievance[s] to exhaust all administrative remedies against Defendant Donald Andison." (*Id.* at 13-14 (internal quotations omitted).) These grievances were denied as untimely. (*Id.*) Through her May 20, 2009 Report and Recommendation, U.S. Magistrate Judge Virginia M. Morgan recommended that the Court dismiss this matter in its entirety for failure to exhaust administrative remedies (where Plaintiff's grievances were untimely) and in part because some of Plaintiff's claims were barred by the statute of limitations. (*Id.* at 12-16.) The Court adopted Magistrate Judge Morgan's recommendation and dismissed this matter on June 6, 2009. (Docket nos. 63 and 64.)

Plaintiff appealed, and on May 8, 2012, the U.S. Court of Appeals for the Sixth Circuit Reversed and Remanded this matter. *Surles v. Andison, et al.*, No. 09-1825, docket no. 74-2 (6th Cir. May 8, 2012). The court held that summary judgment was not warranted in this matter because Defendants had not met their burden of showing that Plaintiff failed to exhaust his administrative remedies. The Sixth Circuit rejected this Court's reasoning and determined that: (1) dismissal of Plaintiff's first complaint for failure to exhaust administrative remedies was not dispositive of the instant matter because (a) the burden of proof had since been shifted to Defendant by *Jones v. Bock*, 549 U.S. 199 (2007), and (b) some of Plaintiff's claims had not been raised in his first complaint; (2) there was a question of fact as to whether Plaintiff had, in fact, exhausted his administrative remedies before filing his first complaint; and (3) there was "a

5

dispute of material fact as to whether Defendants or other MDOC employees prevented [Plaintiff] from filing grievances and exhausting his administrative remedies." *Surles*, No. 09-1825, docket no. 74-2 at 7-8.  The court further held that dismissal of Plaintiff's claims under the statute of limitations was improper because the limitations period would have been tolled during the grievance process.  *Id.* at 8-9.

Plaintiff's case was reopened by this Court on June 12, 2012.  (Docket no. 71.)  On October 31, 2012, the Court appointed Attorney Jarvis E. Williams to represent Plaintiff.  (Docket no. 83.)  After participating in a status conference and becoming familiar with the case, on January 27, 2013, Attorney Williams filed a Motion for Leave to File Amended Complaint on Plaintiff's behalf.  (Docket no. 90.)  On May 16, 2013, the Court denied Plaintiff's Motion, finding that "if Plaintiff amended his Complaint as requested, it would not survive under Fed. R. Civ. P. 12(b)(6);" and the matter would have been dismissed in its entirety.  (Docket no. 91 at 5.)

In July 2013, Plaintiff began filing several motions on his own behalf, stating that he wished to appear as his own co-counsel.  (Docket nos. 92, 93, and 94.)  The Court struck these documents because "an individual has no right to hybrid representation, that is, a right to be heard both in person and by attorney."  (Docket no. 95 at 1 (citations and quotations omitted).)  And on December 12, 2013, Defendants filed their instant Motion for Summary Judgment.  (Docket no. 101.)

Aside from his futile Motion for Leave to File Amended Complaint, Attorney Williams made no progress in this matter.  On February 26, 2014, Plaintiff sent a letter to the Court indicating that he and Attorney Williams had not agreed on the proper course of action.  (See generally docket no. 102.)  On March 27, 2014, the Court contacted Attorney Williams to inquire

6

as to the status of the case. Attorney Williams informed the Court that he and Plaintiff "were not seeing eye to eye" and that he would contact Plaintiff to determine how to move forward. On April 17, 2014, with no response from Attorney Williams, the Court ordered him to show cause for his failure to respond to Defendants' Motion for Summary Judgment. (Docket no. 103.) Again, Attorney Williams failed to respond, so the Court removed him on May 2, 2014.

On June 18, 2014, Plaintiff filed a Motion to Stay (docket no. 105) and a Motion Not to Transfer Plaintiff to Another Prison (docket no. 106). Plaintiff was transferred from the Lakeland Correctional Facility to the Ionia Correctional Facility on July 22, 2014. (*See* docket no. 109.) On July 30, 2014, the Court granted Plaintiff's Motion to Stay while the Court sought counsel. (Docket no. 108.) In its Order, the Court noted that "[i]f the Court is unable to secure counsel by October 3, 2014, the Court will order Plaintiff to proceed on his own and respond to Defendants' Motion for Summary Judgment." The Court further noted that it would "reserve its decision on the other pending Motions in this matter until the stay is lifted." (*Id.* at 2-3.) With no success in finding counsel to represent Plaintiff, the Court lifted its stay and ordered Plaintiff to respond to Defendants' Motion. (Docket no. 112.)

### C. Governing Law

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

7

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> >
> > (2) consider the fact undisputed for purposes of the motion;
> >
> > (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> >
> > (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

    **D.    Analysis**

        **1.    Defendants' Motion for Summary Judgment**

Through their Motion for Summary Judgment, Defendants Andison, Dinius, Dulworth, Face, Lash, Law, McMurtmi, Mitchell, Niedermeyer, Payne, and Sands argue that (1) Plaintiff's access-to-the-courts claim fails because (a) he "has admitted that he did not miss any deadlines in any case as a result of Defendants allegedly confiscating his legal documents," and (b) he has no legitimate underlying claim; (2) Plaintiff's retaliation claims fail because he has not demonstrated any "adverse action;" (3) regardless of the Court's prior findings, Plaintiff has now admitted that he failed to properly exhaust his administrative remedies; (4) "[a]ny claims against Defendant Andison must be dismissed because Plaintiff took no action following Defendants' filing of their 'Suggestion of Death;'" and (5) Defendants are entitled to qualified immunity. (Docket no. 101.)

### a. Plaintiff's Access to the Courts Claims

Prisoners have a fundamental right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right is derived from the Due Process Clause of the Fourteenth Amendment and the First Amendment right to petition for redress of grievances. *Knop v. Johnson*, 977 F.2d 996, 1002 (6th Cir.1992). A prisoner's access to the courts must be adequate, effective, and meaningful, which means that prison officials must provide prisoners with adequate law libraries or assistance from individuals trained in the law. *Bounds*, 430 U.S. at 822, 828. This right is limited to claims where the underlying action is a direct criminal appeal, a petition for writ of habeas corpus, or a civil-rights action. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). Generally, such claims are divided into two categories: (1) claims where "official action is presently denying an opportunity to litigate for a class of potential plaintiffs[, but t]he opportunity to litigate has not been lost for all time" (forward-looking claims); and (2) claims in "specific cases that cannot now be tried . . . no matter what official action may be in the future" (backward-looking claims).

*Christopher v. Harbury*, 536 U.S. 403, 412-13 (2002).

The goal of a forward-looking claim "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413. The goal of a backward-looking claim is to "provid[e] relief obtainable in no other suit in the future." *Id.* at 414. In either case, the plaintiff must show that "a nonfrivolous legal claim ha[s] been frustrated or was being impeded." *Id.* at 415. And notably, the complaint must "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a)" such that it pleads the "underlying cause of action and its lost remedy . . . by allegations . . . sufficient to give fair notice to the defendant." *Id.* at 416, 417-18. To meet this requirement, a plaintiff must show (1) the loss of a nonfrivolous and arguable claim that is "more than a mere hope;" (2) the defendant's acts that caused the loss of the claim; and (3) a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415-16; *see also Clark v. Johnston*, 413 Fed. App'x. 804, 816 (6th Cir. 2011).

Defendants assert that Plaintiff has failed to allege specifically what underlying court case has been frustrated by Defendants' alleged denial of his access to the courts. (Docket no. 101 at 19.) Moreover, Defendants contend, because the documents that Defendants allegedly confiscated were copies of the Uniform Commercial Code, floppy disks, and "legal notes," to the extent that Plaintiff intended to file some sort of UCC action, any such action against an MDOC employee would be frivolous, and the confiscation of such documents would be lawful. (*Id.* at 20-22.)

Plaintiff's Complaint fails to set forth his underlying claim in accordance with Fed. R. Civ. P. 8(a). At most, he alleges generally that Defendants confiscated his "Affidavits, Writ of

10

Habea[s] Corpus, [and] Uniform Commercial Codes" as well as "26 floppy disks to Petitioner's Word Processor, in which these disks had legal noti[c]es forms, etc. on them." (Docket no. 1 at 4.) And he alleges that he "was prohibited from any future communications with the Michigan Secretary of State or any other Federal agencies offices, etc." (*Id.*) Plaintiff also contends that Defendants took "a typed brief belonging to Darryl Steven Goss." (*Id.*) Plaintiff has failed to provide any additional information regarding the nature of his underlying claims in his Complaint, his Response to Defendants' Motion, or his Affidavit attached thereto. Instead, Plaintiff focuses on the nature of Defendants' conduct, such as the types of documents they allegedly confiscated or his broken "printer." (*Id.* at 9; *see also* docket no. 115 at 22-38 and docket no. 115-1 at 17-29.) Such allegations are insufficient to avoid Summary Judgment. Therefore, regardless of Defendants' conduct, Plaintiff's access-to-the-courts claims fail.

### b. Plaintiff's Retaliation Claims

Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999). A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* (citations omitted). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. . . . If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail." *Id.* at 399 (citing *Mount Healthy City Sch. Dist.*

11

*Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).

Plaintiff alleges in his Complaint that Defendants retaliated against him for filing grievances by (1) filing false misconduct reports against him, (2) transferring him to another prison, and (3) prohibiting his access to the courts, as discussed above. (*See* docket no. 1; *see also* docket no. 115 at 38-43.) For the reasons discussed above with regard to Plaintiff's access-to-the-courts claims, his retaliation claim based on the same conduct also fails.

With regard to Plaintiff's misconduct-violation claims, a prisoner cannot prevail on a retaliation claim that is based on false allegations in a misconduct report when the prisoner is found guilty of the misconduct. *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir.2005) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994)) ("[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'"). Plaintiff was found guilty of all of his misconduct violations. (*See* docket nos. 101-3, 101-4, 101-5, 101-9, and 101-10.) Thus, Plaintiff's allegations regarding his misconduct violations do not support his retaliation claims.

With regard to Plaintiff's prison-transfer claims, the Sixth Circuit has repeatedly held that prison transfers are not evidence of an adverse action that would deter a person of ordinary firmness from engaging in protected conduct. *Hix v. Tennessee Dep't of Corr.*, 196 Fed. App'x 350, 358 (6th Cir. 2006). Further, a prisoner has no protected right to remain incarcerated at a particular institution. *Id.*; *Jewell v. Leroux*, 20 Fed. App'x 375, 377-78 (6th Cir. 2001). Nevertheless, where aggravating circumstances exist in a particular case, a prison transfer can be sufficiently adverse to support a retaliation claim. *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005); *Pasley v. Conerly*, 345 Fed.

App'x 981 (6th Cir. 2009))); *see also Hix*, 196 Fed. App'x at 358. In general, such a claim requires foreseeable, negative consequences. *See id.* For example, in *Siggers-El*, "the [p]laintiff not only lost his high paying job that he needed in order to pay his attorney, but the transfer also made it more difficult for his attorney to visit with or represent him because he was moved further away from her." *Siggers-El*, 412 F.3d at 702. And in Pasley, the court found it sufficient that the defendant threatened, "first, to have [the plaintiff] moved out of the unit so that he would lose his job and, second, to use her influence with a warden to have him moved to a location where his family would not be able to visit him." *Pasley*, 345 Fed. App'x at 985.

Here, Plaintiff alleges no negative consequences whatsoever with regard to his transfer except for his repeated assertion that the transfer impeded his access to the Courts. Moreover, in April 2005, six months before he was transferred, Plaintiff requested a prison transfer. (Docket no. 101-6.) Plaintiff's primary argument in response to Defendants' Motion is that Defendants' failure to file affidavits in support of their arguments is grounds for denial of their Motion. (Docket no. 115 at 41.) Plaintiff's argument is unavailing. Thus, the Court should grant Defendants' Motion in this regard.

### c. Exhaustion of Administrative Remedies

As discussed, this matter has previously been dismissed where the Court found that Plaintiff had not exhausted his administrative remedies. (Docket nos. 63 and 64.) The Sixth Circuit reversed and remanded, holding that Defendants had not met their burden of showing that Plaintiff failed to exhaust his administrative remedies. *Surles*, No. 09-1825, docket no. 74-2. Defendants raise this argument again, this time by asserting that Plaintiff admitted his failure to exhaust when he did not respond to Defendants' First Request for Admissions from Plaintiff.

13

(*See* docket no. 101 at 27-30 (citing docket no. 101-14).)

Federal Rule of Civil Procedure 36 permits a party to serve on any other party a written request to admit the truth of any matter within the scope of Rule 26(b)(1).  If the party to whom the request is directed fails to respond within thirty days, the matter is deemed admitted and is conclusively established.  Fed.R.Civ.P. 36(a)(3), (b).  On motion, the Court may permit the admission to be withdrawn.  Fed.R.Civ.P. 36(b).  On September 5, 2013, Defendants served Plaintiff with their Requests for Admissions from Plaintiff.  Therein, Defendants asked Plaintiff to "Admit that [he] failed to file a grievance regarding the activities that [he] complain[s] of in [his] complaint at paragraph[s] [8-18 and 20] which allegedly took place on [various dates]." (Docket no. 101-14 at 5-9.)  Plaintiff failed to respond.  Accordingly, pursuant to Rule 36, these requests are admitted and conclusively establish Plaintiff's failure to exhaust his administrative remedies for purposes of this litigation.

In response to Defendants' Motion, Plaintiff relies primarily on the Sixth Circuit's remand of this matter to argue that Summary Judgment on administrative-remedies grounds is inappropriate.  (Docket no. 115 at 44.)  But the Sixth Circuit's holding was not so broad; to the contrary, the court found that Defendants had failed to meet their burden of showing that Plaintiff had failed to exhaust his administrative remedies.  Defendants now rely on Plaintiff's Rule 36 admissions to sufficiently meet this burden.  Plaintiff also asserts, however, that "Defendants filed their summary judgment motions prior to discovery.  (*Id.*)  Discovery in this matter ran from at least December 19, 2012, through November 18, 2013.  (Docket no. 86.)  Defendants served Plaintiff with their Request for Admissions on September 5, 2013, and they filed their Motion for Summary Judgment on December 18, 2013.  Plaintiff's argument is unpersuasive.

14

Therefore, the Court should grant Defendants' Motion.

### d. Defendant Andison's Death

It is undisputed that Defendant Andison passed away on April 24, 2012. (Docket no. 87.) A court may order a substitution of parties due to death "[i]f a party dies and the claim is not extinguished." Fed. R. Civ. P. 25(a)(1). If no motion for substitution is made within 90 days after a party's death is first suggested on the record, "the action by or against the decedent *must be dismissed*." *Id.* (emphasis added). Defendant Andison's death was first suggested in the record on January 11, 2013, and the period to file a motion for substitution lapsed in April of that year. Plaintiff asserts that his attorney, Jarvis E. Williams, was responsible for responding to the suggestion of death. (Docket no. 115 at 46.) But a dismissal under Rule 25(a) is not discretionary. Fed. R. Civ. P. 25(a)(1). Moreover, Attorney Williams was removed from this matter on May 2, 2014. Plaintiff has provided no explanation as to why he has taken no action regarding Defendant Andison's death since that time, and he does not request any substitution of parties in his response to Defendants' Motion. Instead, Plaintiff suggests that Defendant Andison is a proper party because he has "a pecuniary interest in the outcome of Plaintiff's case." (Docket no. 115 at 46.) Plaintiff's argument is inapposite. Therefore, even if Plaintiff's claims are not dismissed on the grounds discussed above, Plaintiff's claims against Defendant Andison should be dismissed under Rule 25(a).

### e. Qualified Immunity

Defendants allege that they are entitled to qualified immunity for Plaintiff's claims. (Docket no. 101 at 31-33.) Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

15

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "'The defense of qualified immunity protects officials from individual liability for monetary damages but not from declaratory or injunctive relief.'" *Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 635 n.2 (6th Cir. 2013) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)).

The Sixth Circuit has set forth a tri-part test to determine whether a defendant is entitled to qualified immunity: whether (1) "the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred;" (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)); *see also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (en banc) (noting that "objective legal reasonableness" is a distinct, third prong of the qualified immunity analysis). The court may, however, take up these considerations in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

Notably, qualified immunity is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted: "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events

16

in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Therefore, because the Court recommends granting Defendants' Motion for Summary Judgment on the merits, the Court need not address Defendants' assertion of qualified immunity.

### 2. Plaintiff's Motions for Summary Judgment, to Delay Consideration, and for Order to Show Cause

In his Motion to Delay Consideration of Defendants' Motion, Plaintiff asks for additional time to complete discovery. (Docket no. 114.) Discovery in this matter closed in November of 2013. (Docket no. 86.) Moreover, the Court has delayed consideration of Defendants' Motion for more than two years while attempting to secure competent counsel for Plaintiff. Any further delay is unwarranted. Therefore, Plaintiff's Motion should be denied at the time the Court decides Defendants' Motion for Summary Judgment.

In his Motion for Order to Show Cause, Plaintiff asks the Court to hold three non-party officers at his current prison in contempt for "impeding his Access to the Courts." (Docket no. 113.) Such an order would be improper. Moreover, if the Court adopts the recommendations herein, Plaintiff's Motion should be denied as moot.

Combined with his Response to Defendants' Motion, Plaintiff also requests that the Court grant Summary Judgment in his favor. (Docket no. 115.) For the reasons discussed herein, and because the Court should grant Defendants' Motion for Summary Judgment, Plaintiff's Motion should be denied.

### E. Conclusion

For the reasons stated above, the undersigned recommends granting Defendants' Motion for Summary Judgment [101]. The Court should also deny Plaintiff's Motion for Order to Show

Cause [113] as moot and deny Plaintiff's Motion to Delay Consideration of Defendants' Motion [114]. And to the extent the Court considers Plaintiff's Counter-Motion for Summary Judgment contained in his Response to Defendants' Motion [115], the Court should deny the same. Therefore, this matter should be dismissed in its entirety.

### III.  Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: April 2, 2015     s/ Mona K. Majzoub
                         MONA K. MAJZOUB
                         UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record and on Plaintiff Samuel Surles on this date.

Dated: April 2, 2015     s/ Lisa C. Bartlett
                         Case Manager